United States District Court
Southern District of Texas

**ENTERED**

July 25, 2024

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE §<br>COMPLAINT OF ENCORE §<br>DREDGING PARTNERS, LLC §<br>AND INLAND DREDGING §<br>COMPANY, LLC, AS OWNERS §<br>OR OWNERS PRO HAC VICE OF §<br>THE T/V MUDD TUG 14 FOR §<br>EXONERATION FROM OR §<br>LIMITATION OF LIABILITY § | CIVIL ACTION NO. 4:23-cv-604 |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Petitioner M&C Oilfield Services, Inc.'s ("M&C") Opposed Motion to Lift Stay for Limited Purpose (ECF No. 35), Claimants Thomas Silebo ("Silebo"), Jorge Alfaro ("Alfaro"), and Stephan Galvan's ("Galvan")[1] Opposed Motion to Bifurcate (ECF No. 38), and Claimant Hipolito Rodriguez's ("Rodriguez") Opposed Motion for Leave to File Answer and Claim in Limitations Outside Limitations Period (ECF No. 44).[2] Based on a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** M&C's Opposed Motion to Lift Stay for Limited Purpose (ECF No. 35) be **GRANTED**, the Crewmembers' Opposed Motion to Bifurcate (ECF No. 38) be **GRANTED as modified by the Court**, and Rodriguez's

---

[1] Silebo, Alfaro, and Galvan will be collectively referred to as the "Crewmembers."

[2] On April 29, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 62).

Opposed Motion for Leave to File Answer and Claim in Limitations Outside
Limitations Period (ECF No. 44) be **DENIED.**

## I.   Background

This lawsuit arises from the partial sinking of an 18 gross ton tugboat,
Mudd Tug 14 or T/V Mudd Tug 14 (hereinafter referred to as "Mudd Tug 14").
(ECF No. 1 at ¶¶ 5–7, 9, 11–13).  On August 24, 2022, the Crewmembers filed
suit against Encore Dredging Partners, LLC ("Encore") in the 333rd District
Court of Harris County, Texas.  (*Id.* at ¶ 20).  On February 20, 2023, Encore
and Inland Dredging Company, LLC (collectively, "Encore Petitioners") filed a
Complaint for Exoneration from or Limitation of Liability.  (ECF No. 1).  On
April 6, 2023, M&C filed a Complaint for Exoneration from or Limitation of
Liability.  (ECF No. 14).  On August 14, 2023, M&C filed an Unopposed Motion
to Consolidate, which was granted on September 15, 2023.  (ECF Nos. 26–27).

M&C is the owner of Mudd Tug 14.  (ECF No. 1 at ¶ 6).  Encore entered
into a Bareboat Charter Party Agreement (the "Agreement") with M&C and
took possession of Mudd Tug 14 on or about August 12, 2022.  (*Id.*).  On or
about August 18, 2022, while Mudd Tug 14 "was tied up to an anchor barge
during dredging operations at the Bayport Flare near the Houston Ship
Channel, an unexpected weather event came through the area causing the
partial sinking."  (*Id.* at ¶ 13).  The Crewmembers were onboard, and Encore

was in possession of Mudd Tug 14 when it partially sank. (*Id.* at ¶ 14). The Crewmembers were allegedly injured and received treatment and Mudd Tug 14 suffered physical damage. (*Id.* at ¶¶ 15–19). Encore Petitioners allege Mudd Tug 14 was valued at about $175,000.00 before the accident and was valued at $0.00 following the accident. (*Id.* at ¶ 11).

## II.   Discussion

There are three motions pending before the Court and ready to be ruled upon: M&C's Opposed Motion to Lift Stay for Limited Purpose (ECF No. 35), the Crewmembers' Opposed Motion to Bifurcate (ECF No. 38), and Rodriguez's Opposed Motion for Leave to File Answer and Claim in Limitations Outside Limitations Period (ECF No. 44). Each motion will be addressed in turn.

### A.   Opposed Motion to Lift Stay for Limited Purpose

M&C filed an Opposed Motion to Lift Stay for Limited Purpose, which is opposed by Encore Petitioners and the Crewmembers. (ECF Nos. 35–37). M&C seeks to lift the stay for the limited purpose of allowing it to bring its contractual claims against Encore in the 38th Judicial District Court, Cameron Parish, Louisiana, as the Agreement provides. (ECF No. 35 at 4). M&C argues the Agreement and contractual claims fall under the personal contract doctrine, allowing it to pursue these claims outside the Limitation Act. (*Id.* at 1–4).

3

"The Limitation Act [(the "Act")] allows a shipowner, lacking privity or knowledge, to limit liability for damages arising from a maritime accident to the 'amount or value of the interest of such owner in such vessel, and her freight then pending.'" *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (quoting 46 U.S.C. App. § 183(a)). "The Limitation Act is designed to protect shipowners in those cases in which 'the losses claimed exceed the value of the vessel and freight.'" *Id.* (quoting *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992)). "When a shipowner invokes the Act[,] the federal court may stay all other proceedings against the shipowner arising out of the same accident and require all claimants to timely assert their claims in the limitation court." *Texaco, Inc. v. Williams*, 47 F.3d 765, 767 (5th Cir. 1995). "The purpose of the limitation is to preserve the right of the shipowner to limit its liability in a federal forum to the value of the vessel and her pending freight." *Id.*

Although the Act allows a court to stay all proceedings arising out of the same incident, courts have recognized an exception called the personal contract doctrine. *See Trico Marine Assets, Inc. v. Diamond B Marine Servs., Inc.*, No. 99-cv-0951, 2001 WL 946362, at *3 (E.D. La. Aug. 21, 2001) ("Personal contracts entered into by a shipowner are not subject to the Limitation Act."). "The Supreme Court has held that while shipowners can limit their liability

4

under the Limitations Act for acts of the master and crew arising out of the conduct of the master and crew, the shipowner remains liable for his own fault, neglect, and contracts." *Id.* (citing *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933); *Richardson v. Harmon*, 222 U.S. 96, 106, (1911)). "The personal contract doctrine 'deprives a shipowner of the benefits of limitations and exposes him to the full burden of liability his actions produced.'" *Id.* (quoting *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1168 (5th Cir. 1981)). "When a shipowner personally warrants the seaworthiness of a vessel, such warranty is a personal contract and is not subject to the limitation of the Limitation Act." *Id.* "Rather than analyzing the type of contract at issue, 'the test of the personal contract exception is . . . whether the obligation (and therefore the breach) was one the shipowner was personally bound to perform, rather than one contemplated he would delegate to his agents and servants.'" *Trail Marine LLC v. Tex. Petroleum Inv. Co.*, No. 6:22-cv-02050, 2022 WL 17098346, at *4 (W.D. La. Oct. 28, 2022), *report and recommendation adopted*, No. 6:22-cv-02050, 2022 WL 17093106 (W.D. La. Nov. 21, 2022) (quoting *Trico Marine Assets, Inc.*, 2001 WL 946362, at *3). Contracts for indemnity, contribution, and insurance are also personal contracts. *See Trico*, 2001 WL 946362 at *4 (citing *Kattelman v. Otis Eng'g Corp.*, 701 F. Supp. 560, 563 (E.D. La. 1988)).

Here, M&C alleges the Agreement requires:

Encore to pay for the damage, return, and repair of the Mudd Tug 14; return the Mudd Tug 14 in the same good order and condition as when it was received; pay for a post-charter survey; pay damages in the event of a total loss; indemnify M&C for all claims; and secure primary and non-contributory insurance naming M&C as an additional insured.

(ECF No. 35 at 1).  Because the incident involved Mudd Tug 14, M&C argues Encore breached its personal obligations via the Agreement.  (*Id.* at 4). Additionally, M&C argues the Agreement is a personal contract and thus, the alleged breach of the Agreement falls under the personal contract doctrine and may be brought as a separate action from the limitation proceeding.  (*Id.*); *see Signal Oil & Gas Co.*, 654 F.2d at 1168–69 ("Charter parties . . . have been four times treated as personal contracts by the Supreme Court in denying limitation to vessel owners."); *Trail Marine LLC*, 2022 WL 17098346, at *5 (holding a charter agreement is a personal contract, falling outside of the scope of the Act because it "undertook personal obligations to 1) return the vessel in good condition (ordinary wear and tear expected) upon completion of the charter; 2) provide insurance and name Trail Marine as additional insured; and 3) to pay a day rate of $450, continuing until TPIC no longer had a need for the vessel" and did not contemplate delegation of these obligations to a third party).

6

The Agreement here is similar to the charter agreement in *Trail Marine LLC* because, as alleged by M&C, Encore undertook personal obligations with regard to Mudd Tug 14 and the Agreement did not list a third party to be delegated the obligations. (ECF No. 35 at 1). Encore Petitioners do not dispute the accuracy of M&C's summary of the obligations within the Agreement. (ECF No. 36).

Conversely, Encore Petitioners argue the Court should deny lifting the stay because (1) the overriding policy favors a concursus, (2) it is improper under Federal Rule of Civil Procedure ("Rule") 42(b), and (3) it would be unworkable, overly expensive and complicated, and will result in duplicative litigation in different forums. (*Id.* at 4–7).

First, Encore Petitioners' concursus argument fails to acknowledge the personal contract doctrine. (*Id.* at 4–5). While the Court understands the benefits of concursus, the policy considerations are not overriding here where the personal contract doctrine applies. *See Trail Marine LLC*, 2022 WL 17098346, at *4 ("Although the Court agrees that resolving Trail Marine's claims in the limitation proceedings could have been more efficient, the Court is unwilling to find that considerations of efficiency alone are sufficient to overcome application of the personal contract doctrine absent jurisprudential precedent."). Thus, the Court finds this argument unavailing.

7

Second, Encore Petitioners argue lifting the stay would be improper under Rule 42(b).[3] (*Id.* at 5). Rule 42(b) provides, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). In accordance with Rule 42(b), Encore Petitioners argue it "is not convenient, expeditious, or economical" to have separate trials and no Parties would suffer from prejudice if the entire proceeding was tried before this Court. (ECF No. 36 at 5). Further, Encore Petitioners claim there is no remedy a state court could give M&C that this Court cannot award. (*Id.*). The crux of Encore Petitioners' argument is the issues are not so distinct to warrant two trials since the inception of the charter is the central issue in all claims and defenses. (*Id.* at 6). However, Rule 42(b) provides, "the court ***may*** order a separate trial." FED. R. CIV. P. 42(b). The Court is not inclined to order a separate trial when the Agreement clearly falls under the personal contract doctrine. Thus, the Court finds this argument unavailing.

Third, Encore Petitioners oppose a lift of the stay, arguing it would be unworkable, overly expensive and complicated, and will result in duplicative

---

[3] Encore also makes a bifurcation argument within this section. (*Id.* at 6). However, the Court will address bifurcation in full below as the Crewmembers filed a Motion to Bifurcate. (ECF No. 38).

litigation in different forums. (ECF No. 36 at 7). This argument is also unavailing for the same reasons articulated above. Encore Petitioners fail to address why the Court should disregard the personal contract doctrine and the rationale behind the personal contract doctrine.

The Crewmembers also oppose M&C's Motion to Lift Stay for Limited Purpose. (ECF No. 37). The Crewmembers argue (1) there is no tension between a Limitation petitioner's right to federal bench trial and the Jones Act seaman's right to state court jury trial, in which bifurcation is necessary[4] and (2) separate trials would be unnecessary, inefficient, and improper under Rule 42. (*Id.* at 3–5). Because the Crewmembers' argument regarding Rule 42 is almost identical to that of Encore Petitioners, the Court also finds it unavailing here.

The Court recommends granting M&C's Opposed Motion to Lift Stay for Limited Purpose because the contractual claims arising out of the Agreement fall under the personal contract doctrine and outside the scope of the Act. Additionally, adjudication of the contractual issues should be followed in accordance with the negotiated forum selection clause, as the Parties do not dispute the enforceability of the forum selection clause. *See Haynsworth v. The*

---

[4] Because the Crewmembers filed a Motion to Bifurcate (ECF No. 38), the Court will address this issue below in full.

*Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) ("The presumption of enforceability [of a forum selection clause] may be overcome, however, by a clear showing that the clause is unreasonable under the circumstances . . . . The party resisting enforcement on these grounds bears a heavy burden of proof." (quotations omitted)).

### B.  Opposed Motion to Bifurcate

The Crewmembers filed an Opposed Motion to Bifurcate, which is opposed by M&C and Encore Petitioners.  (ECF Nos. 38, 45–46).  The Crewmembers seek to bifurcate the case as follows:

> Phase 1: This Court determines whether Petitioner(s) were negligent and whether the vessel were [sic] unseaworthy;
> Phase 2: As necessary, this Court then determines whether Petitioners' negligence or unseaworthiness, if any, occurred within Petitioner's "privity or knowledge";
> > a. And, if the Court has found liability but no privity or knowledge, the Court then apportions liability;
> > b. If the Court has found liability but also finds privity and knowledge, the Court dismisses the Limitation Proceeding(s) and the Claimants proceed in his court of choice for all further litigation;
> Phase 3: as necessary, the Court stays these proceedings, and allows the damage Claimants to try his damages to a jury.

(ECF No. 38 at 2).

"Although '[f]ederal courts have exclusive admiralty jurisdiction of [limitation of liability] suits brought under the [Limitation] Act,' the savings to suitors clause provides claimants a choice of remedies and forums." *Odfjell*

*Chem. Tankers AS v. Herrera*, 471 F. Supp. 3d 790, 794 (S.D. Tex. 2020) (quoting *Magnolia Marine Transp. Co.*, 964 F.2d at 1575). "The savings to suitors clause gives federal district courts exclusive jurisdiction over '[a]ny civil case of admiralty or maritime jurisdiction,' but saves 'to suitors in all cases all other remedies to which they are otherwise entitled.'" *Id.* (quoting 28 U.S.C. § 1333(1)). "[T]he Fifth Circuit has expressly held that 'where no limitation is possible[,] the damage claimants are entitled to have the injunction against other actions dissolved, so that they may . . . proceed in a common law forum as they are entitled to do under the saving to suitors clause.'" *Id.* at 795 (quoting *Fecht v. Makowski*, 406 F.2d 721, 722–23 (5th Cir. 1969)) (collecting cases). "Thus, obvious tension exists between two statutory rights: the right of a vessel owner to limit its liability before a federal bench, and the right of a Jones Act seaman to pursue common law remedies in the forum of his choice— namely, a state court jury." *Matter of Savage Inland Marine, LLC*, No. 1:19-cv-00536, 2020 WL 10355875, at *2 (E.D. Tex. Dec. 16, 2020).

"The Supreme Court has observed that the purpose of the Limitation Act is not to 'transform the Act from a protective instrument to an offensive weapon by which [Claimants] could be deprive[d] . . . of their common-law rights.'" *Odfjell Chem. Tankers AS*, 471 F. Supp. 3d at 795 (quoting *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957)). Courts have determined a bifurcation

11

process settles the tension between the two statutory rights and does not disrupt judicial efficiency where courts:

> determine both negligence of petitioner and its right to limitation/exoneration in Phase I of the instant proceeding keeping its stay in effect, which will satisfy the Limitation Act's requirements. Should this Court determine that petitioner is not entitled to exoneration and/or limitation of liability, individual claimants submit that Court's jurisdiction will then be at an end, and they should be free to have a state court, or if applicable a state jury, determine the fault of additional parties, the relative degrees of fault, and damages. Thus, the congressional purposes behind the "savings to suitors" clause will be somewhat fulfilled.

*Matter of Complaint of Bergeron Marine Serv., Inc.*, No. 93-cv-1845, 1994 WL 236374, at *1 (E.D. La. May 24, 1994); *see Odfjell Chem. Tankers AS*, 471 F. Supp. 3d at 795–96. Even so, "[i]f claimants have a substantive right to pursue their cause of action under the saving to suitors clause [in state court], it can hardly be abrogated by concerns of judicial efficiency." *Odfjell Chem. Tankers AS*, 471 F. Supp. 3d at 796 (quoting *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 760 (2d Cir. 1988) (quotations omitted)).

Here, the Crewmembers propose three phases of bifurcation where the Court would first address negligence and seaworthiness, then address privity or knowledge and apportionment of fault, and third assess damages, if necessary, in a state court jury trial. (ECF No. 38 at 2). Typically, courts

address questions of liability including, negligence, seaworthiness, privity or knowledge, and apportionment of fault in the first phase and then damages second. *See In re Hedron Holdings, LLC*, No. 21-cv-2295, 2023 WL 6382609, at *2 (E.D. La. Sept. 29, 2023) ("The issues related to liability will overlap across the limitation proceeding. However, the issue of damages, for both Injury Claimants and Property Claimants, will involve separate questions and will require distinct evidence by each Claimant. Once the Court resolves the limitation issues, the need for trial on damages may be eliminated or reduced."). As such, the Court recommends granting the Crewmembers Motion to Bifurcate to the extent the Court will address negligence and seaworthiness, privity or knowledge, and apportionment of fault in one limitation proceeding and then damages, if necessary, in a separate state court proceeding. The Court can determine the liability issues in one limitation proceeding in the order the Crewmembers propose: first, negligence and seaworthiness, second, privity or knowledge, and third, apportionment of fault. *See Matter of Jack'd Up Charters LLC*, 681 F. Supp. 3d 560, 567 (E.D. La. 2023) ("The Court also finds that separating the issues of liability and damages would expedite and economize the limitation proceeding. In a limitation proceeding, the Court first determines whether the claimant's loss was caused by the negligence of the vessel owner or the unseaworthiness of the vessel. The

Court then determines whether the shipowner had privity or knowledge of relevant acts of negligence or unseaworthiness. The parties and the Court would only need to expend resources on the limitation phase of trial rather than also expending resources on the damages phase, which may be unnecessary if the Court limits liability for the Limitation Petitioners."). Stated another way, the Court will address the Crewmembers' proposed Phase 1 and Phase 2 bifurcated steps in one limitation proceeding, but in the order the Crewmembers request.

However, the issue regarding damages will occur in a separate proceeding, if necessary. Separating the liability and damages issues preserves the Crewmembers right to pursue their claims before a jury in state court. *See Odfjell Chem. Tankers AS*, 471 F. Supp. 3d at 796.

M&C argues the Crewmembers proposed method of bifurcation conflicts with the purposes of Rule 42(b) because the Crewmembers "propose that the Court determine fault, determine privity or knowledge separately, and thereafter apportion liability only in the event there is no privity or knowledge." (ECF No. 45 at 3). Even so, M&C asks "that the Court determine issues of liability (including fault and apportionment of fault, privity, and causation) before thereafter lifting its stay for a separate trial of damages only if it finds limitation of liability is not warranted" in the event the Court grants

14

the Crewmembers Motion to Bifurcate. The Court has clarified the liability issues will be heard in one limitation proceeding, but in the order the Crewmembers propose. There will not be two separate proceedings regarding liability.

Next, Encore Petitioners argue bifurcation should not be granted because (1) policy favors concursus, (2) the Crewmembers seek to circumvent binding Fifth Circuit authority, and (3) bifurcation is improper under Rule 42. (ECF No. 46 at 4–7).

First, Encore Petitioners oppose bifurcation arguing policy favors concursus. (*Id.* at 4). Stated simply, the policy Encore Petitioners urge the Court to consider is "holding a single trial encompassing all issues of all parties in federal court protect the petitioners herein, [and] will also advance judicial economy and prevent significant delay and the waste of all parties' resources that will result from separate trials in two different forums." (*Id.* at 5).

Although policy can be persuasive, preserving the Crewmembers' right to a jury trial is more important than promoting judicial efficiency. *See Odfjell Chem. Tankers AS*, 471 F. Supp. 3d at 796 ("Claimants correctly point out that [w]hile judicial efficiency is a laudable goal, concerns of judicial efficiency do not trump a traditional plaintiff's right to a jury trial." (quotations omitted)); *see also In re Hill*, 935 F. Supp. 710, 711 (E.D.N.C. 1996) (Bifurcation,

15

"although arguably less efficient, serves to protect the interests of both the ship owner and the claimant by permitting each to proceed in the forum of his own choosing."); *Matter of Savage Inland Marine, LLC*, No. 1:19-cv-00536, 2020 WL 10355875, at *4 (E.D. Tex. Dec. 16, 2020) ("Though the Court is concerned about judicial efficiency, such concerns may not abrogate the substantive rights of a claimant under the Savings to Suitors clause."). As such, the Court does not find Encore Petitioners' policy argument availing.

Second, Encore Petitioners oppose bifurcation arguing the Crewmembers seek to circumvent binding Fifth Circuit authority. (ECF No. 46 at 5). Specifically, Encore Petitioners argue bifurcation should not be granted in cases involving multiple claimants and inadequate funds, unless all the claimants stipulate to bifurcation. (*Id.* at 5–6). However, stipulations are only required when a party seeks to pursue its personal injury claims in state court before the limitation matter is adjudicated in federal court. *Matter of Savage Inland Marine, LLC*, 2020 WL 10355875, at *4 (citing *Odeco Oil & Gas Co.*, 74 F.3d at 674 and *Magnolia Marine Transp. Co.*, 964 F.2d at 1575). The case law Encore Petitioners rely upon involve claimants seeking to lift a stay in federal court so they could pursue their tort action in state court. *Odeco Oil & Gas Co., Drilling Div.*, 74 F.3d at 673. The Fifth Circuit remanded the case because it was "concerned that potential claims for contribution and indemnity

16

in the state court proceeding could, without proper stipulations, frustrate Odeco's right to limit its liability." *Id.*  Because the Crewmembers are not seeking to pursue their personal injury claims before the limitation matter is completed, the stipulation requirement is not applicable here. *See Matter of Diamond B. Indus., LLC*, No. 22-127, 2022 WL 4608140, at *3 (E.D. La. Sept. 20, 2022) (finding the stipulations required by *Odeco* not applicable as the claimant was not seeking to proceed in state court simultaneously with the limitation proceeding). As such, the Court finds Encore Petitioners' stipulation argument unavailing.

Encore Petitioners also argue, because there are multiple claimants and two potential limitation funds, significant overlap of the issues will occur if the Court allows bifurcation.  (ECF No. 46 at 6).  However, bifurcation of the limitation and damages phases is proper here.  *See Matter of Jack'd Up Charters LLC*, 681 F. Supp. 3d at 564 (holding bifurcation proper although "Limitation Petitioners . . .  assert that because this case involves multiple limitation petitioners, multiple inadequate funds, multiple personal injury claims, and issues of contribution and indemnity [bifurcation] would result in a multiplication of proceedings." (quotations omitted)).  Also, "[b]ecause [the Crewmembers'] state court case is stayed until this Court decides the

limitation claims, there is no risk that [the Crewmembers] can seek a damage award exceeding the limitation fund in the meantime." *Id.* at 566–67.

Third, Encore Petitioners oppose bifurcation arguing bifurcation is improper under Rule 42(b).  (ECF No. 46 at 7.)  Rule 42(b) provides, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b).

"Bifurcation in this case would avoid prejudice to [the Claimants'] right to a jury while also respecting the rights of the vessel owners to seek exoneration before a federal bench." *Matter of Savage Inland Marine, LLC*, 2020 WL 10355875, at *3.  "[C]ourts have recognized that prejudice is the 'most important consideration in deciding whether to order separate trials under Rule 42(b) [and] district courts across the Fifth Circuit have recognized that a claimant's right to a jury trial trumps judicial economy concerns and granted motions to bifurcate on that basis.'" *Matter of Jack'd Up Charters LLC*, 681 F. Supp. 3d at 567 (quoting *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992)).  Because bifurcation helps preserve the Crewmembers' right to a jury trial on damages if limitation is denied, the Crewmembers would not be prejudiced by bifurcation.

The Court finds separating the issues of liability and damages would further expedite and economize the limitation proceeding because the Court would first determine limitations issues, including negligence, seaworthiness, presence of privity or knowledge, and apportion fault if necessary.  Then the "parties and the Court would only need to expend resources on the limitation phase of trial rather than also expending resources on the damages phase, which may be unnecessary if the Court limits liability for the Limitation Petitioners."  *Id.*  The Court does not find Encore Petitioners' Rule 42(b) argument availing.

As such, the Court recommends the Crewmembers' Opposed Motion to Bifurcate be granted to the extent the Court will address negligence and seaworthiness, privity or knowledge, and apportionment of fault in one limitation proceeding and then damages, if necessary, in a separate state court proceeding.

### C.  Opposed Motion for Leave to File Answer and Claim in Limitations Outside Limitations Period

Rodriguez filed an Opposed Motion for Leave to File Answer and Claim in Limitations Outside Limitations Period, which is opposed by M&C and Encore Petitioners.  (ECF Nos. 44, 49–50).  The deadline to file claims arising from the instant case was April 6, 2023.  (ECF No. 6 at 1).  Rodriguez filed this

motion seeking leave to file an answer and claim on January 12, 2024—approximately nine months after the deadline to file claims expired. (ECF No. 44). The crux of Rodriguez's motion is he never received actual notice and thus, the Court should allow him leave to file a late answer and claim. (*Id.* at 3).

"Once an owner initiates a limitation proceeding, Supplemental Rule F(4) requires that all claims against the owner be filed within thirty days." *In re OHT Hawk AS*, No. 21-cv-60796, 2022 WL 1486778, at *1 (5th Cir. May 11, 2022). "The court must provide notice of the limitation proceeding, as well as the claim deadline, by publication in a newspaper for four weeks prior to the claim deadline." *Id.* (citing FED. R. CIV. P. SUPP. F(4)). "Additionally, the owner must mail notice to anyone known to have asserted a claim against him before he initiated the limitation proceeding." *Id.* "Claims must be filed before the date specified in the notice; however '[f]or cause shown,' the court can enlarge the time in which a claim must be filed." *Id.* (quoting FED. R. CIV. P. SUPP. F(4)).

"[A] district court ruling on a motion to file a late claim, should consider (1) whether the proceeding is pending and undetermined, (2) whether granting the motion will adversely affect the rights of the parties, and (3) the claimant's reasons for filing late." *Golnoy Barge Co. v. M/T SHINOUSSA*, 980 F.2d 349, 351 (5th Cir. 1993). "We emphasized that 'relief from a tardy claim is not a

matter of right. It depends on an equitable showing.'" *Id.* (quoting *Tex. Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 363 (5th Cir.1963)).

First, the Court must determine whether the proceeding is pending and undetermined. "[A] proceeding is partially determined when the petitioner has settled a claim and is in settlement negotiations over the others." *In re OHT Hawk AS*, 2022 WL 1486778, at *2 (citing *In re Trace Marine Inc.*, 114 F. App'x 124, 127 (5th Cir. 2004)). "Additionally, district courts within our circuit consider factors like the nearness of a trial date, the amount of discovery completed, and the passage of other material pretrial deadlines in assessing whether a limitation proceeding is partially determined." *Id.*

Here, trial is set for March 24, 2025. (ECF No. 56 at 1). Also, the Parties do not dispute the fact that there has been no judgment or settlement of any claims. (ECF No. 44 at 2; ECF No. 49 at 3; ECF No. 50). However, Encore Petitioners only argue—under this first factor—discovery has been extensive. (ECF No. 49 at 4). M&C concedes the proceeding is pending and moves to the second factor. (ECF No. 50 at 3). Because the trial date is far out and no judgment or settlement of claims have occurred, this factor weighs in favor of allowing Rodriguez leave to file an answer and claim.

Second, the Court must determine whether granting the motion will adversely affect the rights of the Parties. Rodriguez argues his late filed claim

21

does not adversely affect the rights of the Parties, but rather strengthens it because Rodriguez "stipulated to Petitioner's right to bring this limitation." (ECF No. 44 at 3). Encore Petitioners argue, in addition to conducting additional fact discovery, the rights of the Parties will be adversely affected because "it would prejudice the Personal Injury Claimants that timely filed Claims as the Limitation Funds will be further depleted if another claimant is allowed to enter this Limitation Action." (ECF No. 49 at 4). Further, M&C argues allowing Rodriguez to file a late claim would adversely affect the rights of the Parties because the "expert designation deadline is fast approaching, and there has been no discovery regarding the substance of the claim Rodriguez seeks to assert." (ECF No. 50 at 3).

Here, the scheduling order sets June 28, 2024, as the deadline for discovery unless the Parties agree to continue discovery beyond the deadline. (ECF No. 56 at 1). Responding Parties' experts must be named by May 10, 2024. (*Id.*). Additionally, motions must be filed by July 31, 2024. (*Id.*). Rodriguez filed this motion before the discovery and expert designation deadlines passed, but the deadlines have remained unchanged, nevertheless.

Although the Court acknowledges there has been no judgment or settlement and no agreement has been made regarding the limitation fund, the scheduling order states discovery is closed, the expert designations deadline

has passed, and motions are due in less than a week. *See In re OHT Hawk AS*, 2022 WL 1486778, at \*2 (finding the parties would be adversely affected because "the parties to the limitation proceeding stipulated to liability, as well as to the value of the fund from which all claimants could recover. The only other personal injury claim in the proceeding settled. The parties exchanged expert disclosures and other discovery [and] discovery was less than a month from closing"). Because a majority of the scheduling order pretrial deadlines have passed, it is not amenable at this juncture of litigation to add a new claim without adversely affecting the rights of the Parties. As such, this factor weighs against allowing Rodriguez leave to file an answer and claim.

Third, the court must consider the claimant's reasons for filing late. Rodriguez claims he filed late because he did not have actual notice. (ECF No. 44 at 3). Encore Petitioners and M&C claim they both complied with Rule F(4) by publishing notice of the claim default deadline in the newspaper and providing actual notice to those who already asserted a claim, which did not include Rodriguez. (ECF No. 49 at 4; ECF No. 50 at 3).

"The reason normally given for not timely filing a claim is lack of actual notice." *Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 371 (5th Cir. 1990). "Courts have held that it was an abuse of discretion to deny permission to late file claims when the claimant did not speak the language in which the notice

was published or when the notice was not published in the claimant's geographical area." *Id.* (holding individuals who speak English and live in the area notice was published had actual notice and no error was committed in denying them permission to file late claims); *see In re Complaint of Clearsky Shipping Corp.*, No. 96-cv-4099, 2000 WL 1132009, at *2 (E.D. La. Aug. 8, 2000) ("I previously have found cause to allow late claims where there was lack of notice, e.g., because claimants lived outside the geographical area of publication."). The Court also notes the party attempting to file a late claim has the burden to provide a reason for their tardiness. *See In re Complaint of Clearsky Shipping Corp.*, No. 96-cv-4047, 1998 WL 66101, at *2 (E.D. La. Feb. 13, 1998) ("Under certain circumstances, lack of notice has been recognized as cause supporting the late filing of a claim in a limitation proceeding. However, Mr. Clark offers no reasons why, as a resident of Jefferson Parish, he did not receive or could not have received notice by publication.").

Here, Rodriguez asserts he did not receive actual notice.  (ECF No. 44 at 3).  However, Rodriguez fails to provide any reasoning beyond merely alleging a lack of actual notice, such as a language barrier or geographical issue. Absent a more lucid explanation for his tardiness, the Court will not allow a claimant to file a late claim.  *See In re Complaint of Clearsky Shipping Corp.*, 1998 WL 66101, at *2 ("[A]bsent a more lucid explanation for her tardiness, I

24

decline to open the door to any late claimant residing in the area of publication who submits an affidavit stating merely that he or she did not receive notice of the filing deadline."). The Court acknowledges "even constitutionally satisfactory notice could be grounds for leave to file a late claim if the district court, upon receiving an affidavit stating the reasons for the late filing, concludes that the balance of the equities favors the late claimant." *In re River City Towing Servs., Inc.*, 420 F.3d 385, 388 (5th Cir. 2005). Encore Petitioners and M&C properly provided notice in accordance with Rule F(4), but even so, Rodriguez has not adequately stated a reason why he did not have actual notice. Rodriguez's reply adds no additional facts. (*See* ECF No. 51).

As such, this factor weighs against allowing Rodriguez leave to file an answer and claim and the Court recommends Rodriguez's Opposed Motion for Leave to File Answer and Claim in Limitations Outside Limitations Period be denied.

## III.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** M&C's Opposed Motion to Lift Stay for Limited Purpose (ECF No. 35) be **GRANTED**, the Crewmembers' Opposed Motion to Bifurcate (ECF No. 38) be **GRANTED as modified by the Court**, and Rodriguez's Opposed Motion for Leave to File

Answer and Claim in Limitations Outside Limitations Period (ECF No. 44) be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on July 25, 2024.


Richard W. Bennett
United States Magistrate Judge

26